UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 1:18-CR-10450-MLW |
| | ) | |
| ELISEO VAQUERANO CANAS, | ) | **FILED UNDER SEAL** |
| & | ) | |
| JONATHAN TERCERO YANES | ) | REDACTED |
| Defendants | ) | |
| | ) | |

_____

### DEFENDANT ELISEO VAQUERANO CANAS & JONATHAN TERCERO YANES'S JOINT MOTION *IN LIMINE* TO EXCLUDE STATEMENTS MADE BY SALVADOR-GUTIERREZ TO ███

Eliseo Vaquerano Canas and Jonathan Tercero Yanes, defendants in the above-captioned matter, respectfully move this Honorable Court to exclude all statements made by Salvador-Gutierrez to ███ while in custody. Canas and Yanes further join the motion filed by Djavier Duggins and incorporate all of his arguments herein by reference. As grounds, the defendants state that Salvador-Gutierrez's statements were not made in furtherance of any alleged conspiracy and therefore are not statements of a co-conspirator within the meaning of *Fed. R. Evid.* 801(d)(2)(e). Where the circumstances do not provide meaningful corroboration of the statement, it similarly is not admissible as a statement against interest under *Fed. R. Evid.* 804(a)(3). Since the statements do not fall under any exception to the hearsay rule, they are inadmissible against either Canas or Yanes. To the extent that the statement is admissible under either 801(d)(2)(e) or 804(a)(3), it is nonetheless inadmissible under *Fed. R. Evid.* 403 since its probative value is

substantially outweighed by the danger of unfair prejudice associated with the jury returning a guilty verdict on the basis of an unreliable statement.

**FACTS**

[redacted] Henri Salvador-Gutierrez [redacted]

Salvador-Gutierrez came to the United States [redacted]

[redacted]







[redacted]

[redacted]

[redacted]

On August 2, 2018, a body was found at the Henry Avenue Playground in Lynn, Massachusetts. *Detention Affidavit*, at ¶ 42 (Docket Entry #11). The deceased was identified as Herson Rivas. *Id*. at ¶ 43. An autopsy revealed numerous sharp force injuries, and the cause of death was listed as homicide. *Id*.

On August 2, 2018, Henri Salvador-Gutierrez was arraigned in Peabody District Court on a three (3) count complaint, docket # 1886-CR-00861, based on a vehicle stop outside the Newbury Street Inn hotel. *See Docket # 1886CR861*, attached as Exhibit 6. Gutierrez was stopped along with several co-defendants in the instant matter (Lopez, Vaquerano-Canas, and the uncharged ███████ █████████ juvenile). *Id.* They were all charged with state firearms related offense. *Id.*

Henri Salvador-Gutierrez was ordered held at Essex County House of Correction (Middleton). The Commonwealth moved for a dangerousness hearing pursuant to G.L. c. 276, § 58A. *Id.* The Dangerousness Hearing was held on August 8, 2018 in Peabody District Court. *Id.* All defendants were held without bail. An appeal was taken to the Superior Court where the "no bail" determination was upheld. *See Docket # 1877BP587*, attached as Exhibit 7. Henri Salvador-Gutierrez was returned to the Essex County House of Correction. *See* Exhibit 6.

Various search warrants were sought by the federal Government between August 9, 2018 and September 5, 2018 in connection with the murder of Herson Rivas. *Detention Affidavit*, at ¶ 38 (Docket Entry #11). On September 7, 2018, Salvador-Gutierrez was transferred from Essex County House of Correction (Middleton) to Middlesex County House of Correction in Billerica. *See Middlesex County House of Correction Book Memo*, attached as Exhibit 8. ███████████



[redacted]

In October, [redacted] allegedly had a conversation with Salvador-Gutierrez in his unit at the Billerica House of Correction. *Id.* [redacted] during this conversation:

a. SALVADOR admitted that he and other members of the SLS clique had committed a murder in Lynn over the summer. SALVADOR described the other individuals being present for the Lynn murder to include all six of the targets under investigation: LOPEZ,

VAQUERANO, SALVADOR, REYES, TERCERO YANES, and [redacted]

b. SALVADOR stated that after the murder, he and the others burned the clothes they were wearing during the murder in the backyard area behind LOPEZ's house [redacted]

c. SALVADOR stated that after the murder, [redacted] took the knives used in the murder to [redacted] hid the weapons in a drop-down ceiling at the [redacted]

Soon thereafter [redacted] record a conversation between [redacted] and Henri Salvador-Gutierrez [redacted]

████████████████████████████████████████

████████████████████████ On November 28, 2018, the defendants

were charged by way of Indictment in the instant matter. *See* Docket Entry # 11.

## ARGUMENT

I.  **Salvador-Gutierrez's statements are hearsay since they were not made in furtherance of any alleged conspiracy, whether that conspiracy is the Sykos clique or MS-13 in general**

A young, relative newcomer to prison, Salvador-Gutierrez was blathering

away not to further any conspiracy – that of his avowed clique or MS-13 in general

– but rather with the sole motivation to advance his own needs. His statements to

████ did not advance any goals of any alleged conspiracy whether large (MS-13)

or small (the Sykos clique), nor were they statements to another coconspirator

reporting significant events of the conspiracy. As a result, they do not qualify as

statements of a co-conspirator within the meaning of *Fed. R. Evid.* 801(d)(2)(E).

A.  **The Government must establish, through independent evidence, that a conspiracy existed between Canas, Yanes, and Salvador-Gutierrez.**

A statement offered against a party which "was made by the party's

coconspirator during and in furtherance of the conspiracy" is not hearsay. *Fed. R.*

*Evid*. 801(d)(2)(E). Before a statement is admissible under this rule the Government

must establish that: 1) a conspiracy existed between the defendant and the

declarant, and 2) "that the statement was made during the course of and in

furtherance of *that* conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)

(emphasis added).

Whether the proponent has met these requirements is a preliminary question for the Court under *Fed. R. Evid.* 104(a). As such, the Government must establish by a preponderance of the evidence that the elements of Rule 801(d)(2)(E) have been satisfied. In determining whether the proponent has met its burden, "[t]he statement must be considered but does not by itself establish…the existence of the conspiracy or [the defendant's] participation in it…" Fed. R. Evid. 801(d)(2); *United States v. Sepulveda*, 15 F.3d 1161, 1182 (1st Cir. 1993) (same). Indeed, the statement of the coconspirator, "standing alone, is insufficient to meet the preponderance standard of Rule 801(d)(2)(E). *United States v. Portela*, 167 F.3d 687, 703 (1st Cir. 1999).[1]

## B.      The Statement Did Not Further any Goals of the Alleged Sykos Clique Conspiracy

Assuming that the Government establishes by a preponderance of the evidence that a conspiracy existed among members of the alleged Sykos clique, Salvador-Gutierrez's statement did not advance any of the goals of that conspiracy. It was a mere braggadocious statement made to another person with whom Salvador-Gutierrez was incarcerated. Salvador-Gutierrez's intention in making this

---

[1] The Court should make a preliminary "Petrozziello ruling" regarding the admissibility of the statement, and then require the Government to present to the jury its proof as to the existence of the conspiracy prior to admitting the statement. *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977). Some courts have allowed admission of the coconspirator statement *de bene* subject to later proof of the existence of the conspiracy. *See e.g. United States v. George*, 761 F.3d 42, 54-55 (1st Cir. 2014) ("How this works is that a judge conditionally admits the alleged coconspirator statements, 'subject to a later finding by the [judge], supported by extrinsic evidence (other than the statements themselves),' sufficient to show the conspiracy and the speaker's involvement in it."). Yet this procedure is markedly different than that used by the court in the Petrozziello case. There, "[t]he judge insisted that the government present all its non-hearsay evidence first. He then decided whether that evidence permitted reliance on the c-conspirator exception." *Petrozziello*, 548 F.2d at 24 n.3. This method, while "time-consuming," may be preferred since "it avoids the danger that hearsay will be admitted in anticipation of a later showing of conspiracy that never materializes." *Id*. This is particularly true where, as here, the statement amounts to the government's primary evidence of guilt.

statement to ████ was purely to advance his own interests while incarcerated, namely, to ensure his own safety and the safety of his non-coconspirator family members. This statement was not intended to have – nor did it have – any impact on the Sykos conspiracy.

A statement is not in furtherance of the conspiracy unless "it tends to promote one or more of the objects of the conspiracy." *United States v. Ciresi*, 697 F.3d 19, 28 (1st Cir. 2012) (*quoting United States v. Piper*, 298 F.3d 47, 54 (1st Cir. 2002)). Indeed, unless the statement "advance[d] the goals of the conspiracy in some way," it is not made in furtherance of the conspiracy. *Id.* "In furtherance" requires a call to action: the statements must "prompt the listener...to respond in a way that promotes or facilitates the carrying out of a criminal activity." *United States v. Maldonado-Rivera*, 922 F.2d 934, 958–59 (2d Cir. 1990), citing *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir. 1989).

There are several broad categories of statements that have been found to further the goals of a conspiracy. Where a coconspirator is trying to recruit another individual into the conspiracy, statements regarding that attempt are in furtherance. *United States v. Shea*, 211 F.3d 658, 668 (1st Cir. 2000). Statements surrounding a coconspirator's attempt to sell the services of the conspiracy to another are in furtherance. *See Piper*, 298 F.3d at 53 (statements made in the process of trying to sell drugs to a DEA agent were in furtherance of conspiracy). Statements are in furtherance when made with the intention of advancing the status of the declarant, the listener, or another member of the conspiracy. *See*

*United States v. Flores-Rivera*, 56 F.3d 319, 330 (1st Cir. 1995) (statements made to agent with an eye towards promoting the agent within the conspiracy were in furtherance of the conspiracy). Where the statements share "pertinent information about [the] conspiracy's mode of operation," they are often found to be in furtherance of the conspiracy. *United States v. Rosaria-Perez*, 957 F.3d 277, 299 (1st Cir. 2020).

With this background in mind, Salvador-Gutierrez's statements to ████ did not further any goals of the Sykos conspiracy. They were not made as an attempt to recruit ████ or anyone else into the clique. *Shea*, 211 F.3d at 668. Salvador-Gutierrez was not trying to sell the services of the conspiracy to ████ *See Piper*, 298 F.3d at 53. Salvador-Gutierrez was not trying to advance ████'s status within the conspiracy, his own status, or the status of anyone else. *See Flores-Rivera*, 56 F.3d at 330. These statements did not share any "pertinent information about [the] conspiracy's mode of operation;" it was mere storytelling. *See Rosaria-Perez*, 957 F.3d at 299.

As discussed more fully below and in the anticipated pleadings by Salvador-Gutierrez himself, his intention in making these statements was to create the impression that he was a violent thug, with violent friends, who was not to be messed with. The creation of a violent reputation was necessary to protect himself against possible threats in jail.

Indeed, ████ likely leveraged his reputation and MS-13 tenure to gain power and control over Salvador-Gutierrez. ████ has a criminal record reflecting

serious violence, ███████████████████████████████████

███████████████████████████████████████████

From the moment Salvador-Gutierrez, a ████████ saw ██████ in Billerica, two

things were true: ██████ was a government agent and it is likely that ██████'s

reputation for violence preceded ████████ was indicted in *Recines-Garcia*, the

2016 MS-13 federal prosecution, and Salvador-Gutierrez knew all too well of ████

's involvement in that case █████████████████████████

███████████████████████████████████████████

██████ was not a member of the Sykos clique. *See* U.S. Attorney's Office,

District of Massachusetts, *MS-13 Member Pleads Guilty to Attempted Murder of*

*Rival Gang Member,* Dep't Just. (Apr. 13, 2017), https://www.justice.gov/usao-

ma/pr/ms-13-member-pleads-guilty-attempted-murder-rival-gang-member.

The imbalance of power—when considered with the specific allegations

anticipated in Salvador-Gutierrez's forthcoming motion—casts serious doubts about

the veracity of his statements. One thing is clear—the statements made by

Salvador-Gutierrez were not motivated by the purpose of furthering any alleged

conspiracy. It was an act of puffery that served the intuitively obvious purpose of

asserting his toughness and as a caution to those that might threaten him harm. It also, as detailed in his own motion on this subject, was a direct response to statements of ██████ that had nothing do with any alleged conspiracy. As in *LiCausi*, where the coconspirator's report to his girlfriend – assumed to be a coconspirator – was "more appropriately characterized as simply to avoid an argument with his girlfriend," the statement here is best characterized as made to forge a reputation that might provide him some safety, and not to further any goals of the conspiracy. *United States v. LiCausi*, 17 F.3d 36, 50 (1st Cir. 1999). Since it was not in furtherance of the conspiracy, it is inadmissible under 801(d)(2)(E) and must be excluded as hearsay.

**B.     Even if the Government Can Prove that the Conspiracy was the Broader Transnational MS-13 Organization, the Statement Nonetheless Does Not Constitute a Report to a Coconspirator Regarding Major Events of the Conspiracy**

The Government is likely to argue that the statement falls within the co-conspirator exception because Salvador-Gutierrez's statement to ██████ is a report to a co-conspirator about major events of the conspiracy. However, the statement does not constitute a report to a coconspirator regarding major events of the conspiracy since ██████ and Salvador-Gutierrez were not members of the same conspiracy. Instead, the statements were mere narratives of past events.

Statements that "inform co-conspirators of the activities of the conspiracy's members furthers the conspiracy." *United States v. Aviles-Colon*, 536 F.3d 1, 15 (1st Cir. 2008). Yet not every statement that happens to be made to a coconspirator can fall under this rule; where the statements consist of the declarant "merely blowing

off steam or venting anxiety," they are not in furtherance. *United States v. LiCausi*, 17 F.3d 36, 50 (1st Cir. 1999). For this rule to apply, the government must prove by a preponderance of the evidence that █████ and Salvador-Gutierrez were coconspirators. Yet, merely establishing that they both joined separate conspiracies that fell under the broad umbrella of MS-13 cannot be enough. *United States v. Gigante*, 166 F.3d 75, 82–83 (2d Cir. 1999).

In determining whether two people were members of the same conspiracy, the court looks to "the totality of the evidence" and generally considers the following factors: "the existence of a common purpose, the interdependence of various elements in the overall plan, and overlap among the participants.*" United States v. Franco-Santiago*, 681 F.3d 1, 8–9 (1st Cir. 2012), *abrogated on other grounds, Musacchio v. United States*, 136 S. Ct. 709 (2016). The interdependence factor "addresses 'whether the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme.'" *United States v. Ciresi*, 697 F.3d 19, 27 (1st Cir. 2012). "Each individual must think the aspects of the venture interdependent, and each defendant's state of mind, and not his mere participation in some branch of the venture, is key.'" *Id*. No one factor is determinative, "and courts should not overly rely on these factors without analyzing what kind of agreement existed between the defendant and the other co-conspirators." *United States v. Monserrate-Valentin*, 729 F.3d 31, 42-43 (1st cir. 2013). "[C]onspiracy law, like most criminal law, focuses upon the activities of an individual defendant. It is therefore dangerous to think of a conspiracy as a kind of

'club' that one joins or a 'business' in which one works." *Id.* at 43 (internal citation omitted).

MS-13 itself does not constitute a conspiracy, nor does membership in it. On the contrary, a multi-year study found that "MS13 is a diffuse organization of sub-parts, with no single leader or leadership structure that directs the entire gang." Insight Crime & Center for Latin American & Latino Studies at American University, MS13 in the Americas (2018), available at https://www.insightcrime.org/wp-content/uploads/2018/02/MS13-in-the-Americas-InSight-Crime-English.pdf. Due to this decentralized structure, mere membership under the umbrella of MS-13 is not conclusive proof that two people joined a conspiracy.

It is well established in the First Circuit that, for a conspiracy to exist, there must be a common objective, an affirmative agreement, and a meeting of the minds. *United States v. Glenn*, 828 F.2d 855, 857 (1st Cir. 1987), citing *United States v. Borelli*, 336 F.2d 376, 384 (2d Cir.1964). To envision a conspiracy as a "'club' that one joins…falsely suggest[s] that the 'member'…automatically becomes legally responsible for the entire enterprise." *United States v. Glenn*, 828 F.2d 855, 857 (1st Cir. 1987).  This type of situation, a chance encounter by two alleged members of a 30,000-member transnational organization, was expressly cautioned against by the Second Circuit:

> However, even in the context of organized crime, there is a limit to the proper use of Rule 801(d)(2)(E) to admit coconspirator testimony. The district court in each instance must find the existence of a specific criminal conspiracy beyond the general existence of the Mafia. And when a RICO conspiracy is

charged, the defendant must be linked to an individual predicate act by more than hearsay alone before a statement related to that act is admissible against the defendant under Rule 801(d)(2)(E).

*Gigante*, 166 F.3d at 82–83. In short, there must be some limiting principle to which statements of gang members can be admissible where an organization of this size is involved. Otherwise, every statement made by any of the tens of thousands of MS-13 members to any other member – even if they have never met each other or the defendant – would be admissible. This is broadening the coconspirator exception too far.

Though statements reporting significant events of the conspiracy to a coconspirator are often found to be in furtherance, statements that are "mere narratives of past events," which do not advance any of the conspiracy's goals, are not in furtherance of the conspiracy. *United States v. Ciresi*, 697 F.3d 19, 28 (1st Cir. 2012) (*citing United States v. Warman*, 578 F.3d 320, 338 (6th Cir. 2009); *United States v. Santos*, 20 F.3d 280, 286 (7th Cir. 1994)). *See also United States v. Snyder*, 930 F. 2d. 1090, 1095 (5th Cir. 1991) ("Mere idle chatter" even between co-conspirators, is not admissible under 801(d)(2)(e)); *United States v. Mangan*, 575 F. 2d 32, 44, 45; (2nd Cir. 1978) (boasts or idle gossip not admissible); *United States v. Taratineo*, 846 F. 2d 1384, 1412 (D.C. Cir. 1988) (casual comments among coconspirators are not in furtherance) (quoting *United States v. Snider,* 720 F. 2d 985, 992 (8th Cir. 1983)); *United States v. Darwich*, 337 F. 3d 645 (6th Cir. 2003) (idle chatter or casual conversation about past events is not considered a statement "in furtherance of the conspiracy); *United States v. Desena,* 260 F. 3d 150 (2nd Cir.

2001) ("we agree that it is difficult to construe casual story telling in a bar, more than two years after event, as anything but 'mere idle chatter'").

Here, Salvador-Gutierrez's statement to ██████ was a "mere narrative of past events," which did not further any goals of the alleged conspiracy, and therefore cannot be said to have been made in furtherance of the conspiracy. *Ciresi*, 697 F.3d at 28. ██████ was not a member of the Sykos clique; it is unclear whether the two even knew each other prior to meeting while in custody. There is no suggestion that the two cliques were cooperating with each other or working together such that informing each clique about the other's events somehow furthered a greater conspiracy.

In MS-13, the local clique is "the most important unit of the gang – more important than any individual, any leader, or any upper level of the structure." Insight Crime & Center for Latin American & Latino Studies at American University, MS13 in the Americas (2018), at 29. Further, the cliques on the East Coast, including those in Boston, were noted as being "rudimentary and undisciplined gang cliques" over which El Salvador's MS-13 leaders had little, if any, control. *Id.* at 5. Since ██████ and Salvador Gutierrez were members of different cliques[2] – each with its own distinct goals and plans – there is no reason to believe that they ever agreed to be members of the same conspiracy.

---

[2] Salvador-Gutierrez is alleged to be a member of the Sykos clique ██████ a member of the East Boston Loco Salvatrucha clique. U.S. Attorney's Office, District of Massachusetts, *MS-13 Member Pleads Guilty to Attempted Murder of Rival Gang Member,* Dep't Just. (Apr. 13, 2017), https://www.justice.gov/usao-ma/pr/ms-13-member-pleads-guilty-attempted-murder-rival-gang-member.

Further, while all MS-13 cliques generally operate semi-autonomously, the

Sykos clique was █████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

The government cannot establish interdependence either, since the scheme to

murder Herson Rivas was neither "necessary or advantageous to the success of" any

aspect of MS-13's plans or goals to which ██████ was a party. *Franco-Santiago*, 681

F.3d at 11. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Finally, the government cannot establish an "overlap among the

participants." *Franco-Santiago*, 681 F.3d at 8. ██████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████████████████

Therefore, because ██████ lacked a common purpose with Sykos and its members, ████'s plans were not interdependent with those of the Sykos clique, and ████'s activities did not overlap with any of the Sykos members named in this case, ████ was not a coconspirator with Salvador-Gutierrez. As a result, this statement cannot be said to have been a report to a coconspirator about "the activities of the conspiracy's members." *Aviles-Colon*, 536 F.3d at 15. Since the statement did not otherwise further any goals of the Sykos clique, this statement can only properly be characterized as a "mere narrative of past events," which is not admissible under 801(d)(2)(E). *Ciresi*, 697 F.3d at 28.

## II.   Salvador-Gutierrez's Statement is So Inherently Unreliable that its Relevance is Substantially Outweighed by the Danger of Unfair Prejudice

Relevant evidence is inadmissible where its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Fed. R. Evid.* 403. Where evidence is unreliable, its probative value plummets and becomes substantially outweighed by the risk of unfair prejudice from the jury's consideration of it such that it must be excluded under *Fed. R. Evid.* 403.

Prior to the passage of *Crawford v. Washington*, 541 U.S. 36 (2004), statements of co-conspirators were only admissible where the statement contained

"adequate 'indicia of reliability.'" *United States v. Fahey*, 769 F.2d 829, 840 (*quoting Ohio v. Roberts*, 448 U.S. 56, 66 (1980)). Reliability was "examined on a case-by-case basis." *Id.* at 839-840. If the statement was not deemed sufficiently reliable, its introduction violated the Confrontation Clause unless the declarant was subject to cross-examination. *Id.*

*Crawford* then limited the Confrontation Clause analysis to statements that are "testimonial" in nature. *Crawford*, 541 U.S. at 53. After *Crawford*, a statement of a co-conspirator does not raise Confrontation Clause concerns unless it is testimonial.[5] Where the statement meets the technical requirements of 801(d)(2)(E), but is inherently unreliable, *Fed. R. Evid.* 403 is the proper vehicle for exclusion.

We start with the principle that out-of-court statements are presumed to be inherently unreliable. *Bourjaily*, 483 U.S. at 179. Where the statement satisfies the requirements of a hearsay exception, the statement is thought to be more reliable. Yet, where there exists substantial reason to doubt the reliability of the statement such that the risk of unfair prejudice outweighs its probative value, it must nonetheless be excluded despite meeting the technical requirements of the co-conspirator exception. *Fed. R. Evid.* 403.

Factors that pre-Crawford Courts considered relevant in determining whether the statement was reliable include whether it contained "express assertion[s] about past fact," whether the declarant had personal knowledge about the subject matter of the declaration, whether cross-examination could reveal

---

[5] Canas and Yanes both join Djavier Duggins' argument that Salvador-Gutierrez's statements were testimonial, and he incorporates that argument as if set forth herein. Canas and Yanes make the alternative argument that, if the statements are not testimonial, they nonetheless must be excluded under *Fed. R. Evid.* 403.

defects in the declarant's ability to know what they declared, whether the statement could have been founded on "faulty recollection," whether the circumstances suggest the declarant could have misrepresented others role in the crime, and whether the declarant had a reason to lie. *Dutton v. Evans*, 400 U.S. 74, 88-89 (1970). Other factors relevant to reliability include whether the statement was "made in a coercive atmosphere," and whether it constitutes a "major portion of the government's case." *United States v. Fahey*, 769 F.2d 829, 840 (1st Cir. 1985) (*citing Dutton*, 400 U.S. 74). These factors are equally applicable to a consideration of reliability even in the post-Crawford context.

Here, Salvador-Gutierrez's statement is so inherently unreliable that its probative value plummets and the risk of unfair prejudice skyrockets. If true, the statement is certainly probative. If false, the risk of an erroneous conviction on serious charges is so high as to constitute unfair prejudice. Where this statement amounts to the most significant evidence of guilt, this Court should be cautious about its reliability, particularly where Salvador-Gutierrez will not be subject to cross-examination. The jury should not be permitted to render a guilty verdict on charges this severe primarily based on an unreliable, braggadocios statement that contains demonstrable lies.

Aside from the fact that Salvador-Gutierrez claimed to have had personal knowledge about the murder, all the other *Dutton* factors exemplify that this statement is unreliable. As to the first, the recorded statement consists almost

exclusively of "express assertion[s] about past fact." *Dutton*, 400 U.S. at 88-89. This

counts heavily against its reliability. *Id.*

Cross-examination would reveal countless defects in Salvador-Gutierrez's

ability to know what he declared. *Dutton*, 400 U.S. at 88-89. . How

than could he be expected to remember, in precise detail, prior events which

occurred with significant speed? He is thus a poor reporter of past events, casting

doubt on the accuracy of the story he told t          These defects would be

abundantly clear to the jury if Salvador-Gutierrez was subjected to cross-

examination. Indeed, merely eliciting these facts through introduction of the

without Salvador-Gutierrez being put through the rigor of cross-

examination, is inadequate to portray his astounding lack of competence. Only through cross-examination would the jury see for themselves how unreliable a reporter Salvador-Gutierrez is. Without that cross-examination, there is a substantial risk of unfair prejudice to both Canas and Yanes.

Given these competency concerns, ████████████████████████████, there is a substantial risk that the statements were "founded on 'faulty recollection.'" *Dutton*, 400 U.S. at 89. Given the likelihood that these statements were based on a faulty recollection, there is a substantial risk that Salvador-Gutierrez "could have misrepresented others role in the crime." *Id*. This misrepresentation could have included a claim that Canas or Yanes was at the scene of the crime, when in fact they were not. That possibility amounts to a substantial risk of unfair prejudice to both defendants.

The circumstances also suggest that Salvador-Gutierrez had a "reason to lie." *Dutton*, 400 U.S. at 89. Salvador-Gutierrez is a young man with an impressive lack of ability to comprehend his environment, and at the time, he was newly incarcerated. That incarceration demands the creation of a violent reputation so as to avoid being targeted as weak. What better way to achieve that reputation than to align himself with MS-13 – a violent street gang – and to claim that he had participated in gruesomely violent acts?

As an ex-correctional officer at Sing Sing observed: "Prisoners tell lies. Every corrections officer knows this. In fact, there's even a joke about it: 'How do you know when a prisoner is lying? When he opens his mouth." *See All Prisoners Lie*

23

*Transcript*, MOTH, https://themoth.org/story-transcripts/all-prisoners-lie-transcript (original air date Feb. 8, 2010). The officer recounted two specific instances where prisoners falsely claimed they were incarcerated for murder, when in fact they were not. *Id*. The lies were told, he claimed, because the inmates "were in a place where you want everybody to think you're as tough as you could possibly be." *Id.*

Others have noted that there is an "intersection of reputation and safety during incarceration," which causes inmates to "use violence to earn a reputation of respect." Stephanie J. Morse & Kevin A. Wright, *Imprisoned Men: Masculinity Variability and Implications for Correctional Programming*, CORRECTIONS (2019), available at <https://doi.org/10.1080/23774657.2019.1694854>. As one inmate observed: "So to protect yourself, you have to build up a reputation of respect and you have to be aggressive, and the more aggressive person gains the most respect, and the more respect a person gets, the least violence that they have to endure … [o]r inflict." *Id.*

Indeed, we know that Salvador-Gutierrez lied in telling this story to ██████ Salvador-Gutierrez claimed, in trying to justify the killing to ██████████████



████████████████████████████████████████████████████. How then, knowing full well that Salvador-Gutierrez lied to ████, can we decide which

pieces of his statement were truthful? In short, we can't – no part of his statement is reliable. The jury should not be permitted to render a guilty verdict primarily on the basis of a statement which we know contains outrageous lies.

The risk of unfair prejudice associated with allowing the jury to find either of these defendants guilty on the basis of a statement which contains demonstrable lies is substantial. Where we know that Salvador-Gutierrez's statement contained lies, and where it is ripe with indicia of unreliability due to intellectual defects, its probative value is minimal. Since the risk of unfair prejudice substantially outweighs the probative value, the statement must be excluded. *Fed. R. Evid.* 403.

### III. Salvador-Gutierrez's statements are not admissible as statements against penal interest

Since there is not meaningful corroboration of the trustworthiness of Salvador-Gutierrez's statement, it is not admissible as a statement against interest.

A statement which is made out-of-court and is being offered to prove the truth of the matter asserted is inadmissible hearsay unless it falls within one of the recognized hearsay exceptions. *Fed. R. Evid.* 801. A statement may be admissible under the Statement Against Interest exception to the hearsay rule only if it satisfies two conditions: 1. The statement is one that a reasonable person would only have made if they "believed it to be true because, when made, it … had so great a tendency to … expose the declarant to civil or criminal liability," and 2. "is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability." *Fed. R. Evid.* 804)(a)(3).

To satisfy the second prong, there must be "meaningful corroboration" which "clearly indicates that the statements were worthy of belief, based upon the circumstances in which the statements were made." *United States v. Taylor*, 848 F.3d 476, 486-87 (1st Cir. 2017). The statement must be "sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Id.* at 486 (*quoting United States v. Barone*, 114 F.3d 1284, 1295 (1st Cir. 1997)). Factors relevant to the inquiry of whether the statement is corroborated by the circumstances include whether it is "'directly against the declarant's penal interest,' made to a close associate or family member, or there is no indication that the speaker had motive to lie." *United States v. Taylor*, 848 F.3d 476, 487 (1st Cir. 2017). "On the other hand, statements made ... in an apparent attempt by the speaker to shift blame or otherwise 'diminish his role in the criminal activity described in the statements,' may not necessarily be corroborated by the circumstances." *Taylor*, 848 F.3d at 487 (*quoting United States v. Barone*, 114 F.3d 1284, 1301 (1st Cir. 1997)).

The statements here were not "made to a close associate or family member." *Taylor*, 848 F.3d at 487. Further, the circumstances do not corroborate the trustworthiness of the statement. On the contrary, as discussed more fully above, Salvador-Gutierrez had a substantial incentive to lie to ███ to protect himself against future violence while incarcerated by creating a reputation of violence. *Id.* Given all those reasons, it cannot fairly be said that this is a statement that

Salvador-Gutierrez "would not have made … unless believing it to be true."

*Gonzalez-Seda*, 236 F.Supp.3d 535, 536 (D.P.R. 2017). Without that meaningful

corroboration, the statement is inadmissible as a statement against interest.[6]

## CONCLUSION

For all the reasons discussed above, Salvador-Gutierrez's statement to ███

must be excluded.

Respectfully Submitted,                     Respectfully Submitted,
**ELISEO VAQUERANO CANAS**                  **JONATHAN TERCERO YANES**
By his attorney:                            By his attorney:

/s/ Jessica Hedges                          /s/ Leonard E. Milligan III
Jessica D. Hedges                           Leonard E. Milligan III
BBO No. 645847                              BBO No. 668836
Hedges & Tumposky, LLP                      Milligan, Rona, Duran, and King, LLC
50 Congress St., Suite 600                  50 Congress St., Suite 600
Boston, MA 02109                            Boston, MA 02109
T (617) 722-8220                            T (617) 395-9570
hedges@htlawyers.com                        lem@mrdklaw.com


## CERTIFICATE OF SERVICE

I, Jessica D. Hedges, hereby certify that on this 28th day of September, 2020,
I served one true and correct copy of this motion, through e-mail, on all counsel of
record in this matter.

/s/ Jessica Hedges
Jessica D. Hedges

---

[6] To the extent that the statement is admissible as a statement against interest, it nonetheless must be excluded pursuant to *Fed. R. Evid*. 403, as discussed in section II above.